## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LAWRENCE SCIBLE,

        Plaintiff,

v.                                      Civil Action No. 1:08cv100
                                        (Judge Keeley)

KAREN STEWARD, WILLIAM ANDERSON,
ROBERT HILL, JOHN DOE, DONNIE
SPRINGSTON, WILLIAM FOX, JIM
RUBENSTEIN, TERESA WAID, ROBIN
MILLER, SANDY TIEGE, JAMES GRAGG,
BRIAN SCOTT, WILLIAM HALE AND THE
WEST VIRGINIA DIVISION OF CORRECTIONS,

        Defendants.

## OPINION/REPORT AND RECOMMENDATION

### I.   Factual and Procedural History

On April 7, 2008, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. In addition, the plaintiff filed a Motion for Preliminary Injunction.

On April 9, 2008, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $9.83. The plaintiff paid his initial partial fee on April 23, 2008.

On April 24, 2008, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted at that time. Thus, the Clerk was directed to issue summonses for the defendants. The defendants were served by the United States Marshal Service.

On April 30, 2008, the plaintiff filed an Addendum to the Complaint and a Motion for Summary Judgment.

On May 21, 2008, the defendants filed a response to the plaintiff's summary judgment motion. Additionally, the defendants filed a Motion to Dismiss the complaint and a Memorandum in Support.

Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on May 23, 2008, which advised the plaintiff of his right to file a response to the defendants' motion.

The plaintiff filed a response to the motion on June 6, 2008, to which the defendants replied on June 13, 2008.

On August 21, 2008, the plaintiff filed a supplement in support of his Complaint and Motion for Preliminary Injunction. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.01 <u>et</u> <u>seq.</u>

## II.  <u>The Contentions of the Parties</u>

### A.  <u>The Complaint and Motion for Injunctive Relief</u>

In the complaint and motion, the plaintiff asserts that on or about October 6, 2007, he received an incident report which alleged a violation of Division of Corrections ("DOC") Policy Directive 325.00, Misuse of Correspondence. Motion (dckt. 2) at 5. In the report, Karen Steward ("Steward"), asserted that the plaintiff was attempting to manipulate DOC Policy Directive ("PD") 503.00, Mail Privileges for Inmates, by trading photos of his girlfriend through a third party. <u>Id.</u> At the time, the plaintiff's girlfriend was an inmate at another DOC facility. <u>Id.</u> According to the plaintiff, PD 503.00 states: "Inmate to inmate letters must be written correspondence and not contain any items, money or other articles." The incident report was referred for charges by William

Anderson ("Anderson"), Robert Hill ("Hill") and/or John Doe ("Doe") and assigned case number SMC-07-0389-H. Id.

In the incident report, Steward asserted that inmate to inmate contact was limited to written correspondence and that the plaintiff was attempting to circumvent that rule by using a third party to pass photographs of his girlfriend to him. Id. at 6. During the plaintiff's disciplinary proceedings, he conceded that he attempted to use a third party to obtain a photo of his girlfriend, but argued that PD 503.00 is vague because it provides instruction only on what an inmate may *enclose* in a letter to another inmate. Id. In addition, the plaintiff argued that PD 503.00 is vague and ambiguous because it does not specifically state that inmate to inmate contact can only be had through written communication. Id. Moreover, the plaintiff argued that there are other ways to obtain such photos and that other West Virginia Institutions allow inmates to trade photographs through a third party. Id. Finally, the plaintiff argued that instead of being subject to disciplinary proceedings, he should have only been given a warning. Id.

On October 10, 2007, the plaintiff was found guilty of the charges by William Hale ("Hale"). Id. The plaintiff received 30 days loss of all privileges, suspended, and was placed on 90 days probation. Id. at n. 2. The plaintiff appealed that finding to defendant William Fox ("Fox") and Jim Rubenstein ("Rubenstein"). Id. at 6. The plaintiff's appeals were denied. Id.

On October 15, 2007 and October 24, 2007, the plaintiff received two more violation reports related to his outgoing mail. Id. at 7. In both reports, the plaintiff was charged with violations of PD 325.00-2.32, Insubordination/Insolence. Id. According to the plaintiff, PD 325.00-2.32 states: "An inmate shall not be insubordinate or insolent to a staff person. No inmate shall slander any person." Id. These incident reports were again referred for charges by Anderson, Hill and/or Doe. Id.

The plaintiff's October 15th incident report was given case number SMC-07-0413-H.  Id.  In that report, Steward alleged that the plaintiff had written a letter to his girlfriend that made rude comments and accusations about her.  Id.  The plaintiff's comments were "Its (sic) apparent by reading the write-up the woman at the post office is reading all my mail from you, Dad and whoever. I guess her personal life is such a failure, boring, including relationships that she has nothing better to do than to make someone else's life miserable.  People like that who hate themselves and their own circumstances in life.  Or perhaps she was abused as a child or more likely done wrong by men in her past so she has to take it out on us.  But no matter, nothing she can do to me can make my life unhappy."  Id. at n. 4.

The plaintiff's October 24th incident report was given case number SMC-07-0425-H.  Id. at 7.  In that report, Steward alleged that the plaintiff's outgoing mail to his girlfriend contained accusations about Steward and the hearing officer.  Id.  The plaintiff's comments were "the hearing officer and the PO lady was in cahoots so I'm not surprised I was found guilty."  Id. at n. 5.  The plaintiff also made statements like "Think she needs Prozac or some other such drug.  Got to have mental problems without doubt.  Perhaps she is a voyeur.  I'll start addressing your letters, Hi Terri (plaintiffs' girlfriend) and Karen (defendant Steward)."  Id.

During his disciplinary proceedings, the plaintiff argued that his statements about Steward were protected speech under the First Amendment.  Id. at 7-8.  Moreover, the plaintiff asserted that his statements were merely unflattering and not directed to Steward either orally or in writing.  Id. at 8.  However, the plaintiff also concedes that he knew all of his outgoing mail was subject to monitoring.  Id. at n. 6.

On November 8, and 14, 2007, the plaintiff was found guilty of both charges by Hale.  Id.

at 8. As a result, the plaintiff received 30 days loss of all privileges on both counts to run consecutive. Therefore, the plaintiff was not permitted to have visits, make telephone calls, watch TV or listen to a radio, read books, purchase items from the store or have more than one hour of recreation a day. Id. at n. 7. The plaintiff appealed the disciplinary decisions to Fox and Rubenstein. Id. at 8. The plaintiff's appeals were denied. Id.

On November 14, 2007, the plaintiff asserts that Don Springston ("Springston") threatened to send him "out of the facility" if the plaintiff continued to make comments about staff. Id. at 8. On November 16, 2007, the plaintiff was transferred out of St. Mary's Correctional Facility to a higher security prison at the Huttonsville Corrections Center. Id. at 9. The plaintiff asserts that such transfer was in retaliation for exercising his right to free speech and right to petition the government for redress. Id. Moreover, the plaintiff asserts that his transfer adversely affects his chances of work release, parole eligibility and other liberty interests. Id.

On March 5, 2008, the plaintiff sent a letter to the Governor of the State of West Virginia which complained of staff misconduct by the Huttonsville librarian, Ovid Duncan. Id. The Governor's Office forwarded a copy of the letter to "the defendants." Id.

On March 25, 2008, the plaintiff received another incident report. Id. This report charged him with violating PD 325-2.17, Fraudulent Misrepresentation. Id. In the incident report, Robin Miller ("Miller") alleged that the plaintiff made false accusation against Mr. Duncan in an attempt to deceive the Governor's Office. Id. at 9-10. That report was referred for charges by James Gragg ("Gragg") and Brian Scott ("Scott") and assigned case number HCC-08-0448-T. Id. at 10; Ex. E. On April 1, 2008, the plaintiff was found guilty of the offense by Sandy Tiege ("Tiege"). Id. At the time this case was filed, the plaintiff's appeals of that finding were still pending. Id.

Based on the facts as alleged by the plaintiff, the plaintiff contends that:

1. DOC PD 503.00 is vague and ambiguous as applied in the instant case and is unconstitutional on its face.

2. The defendants violated his 1st and 14th amendment rights by punishing him for exercising his right to free speech in his outgoing mail as it relates to receiving a picture of his girlfriend.

3. The defendants violated his 1st, 5th and 15 Amendment rights by maliciously punishing the plaintiff under a vague and ambiguous policy.

4. The defendants violated his 1st, 5th, 8th and 14th Amendment rights by maliciously punishing the plaintiff for exercising his right of free speech in his outgoing mail.

5. The defendants violated his 1st, 5th and 14th Amendment rights by maliciously transferring the plaintiff to a higher security prison in retaliation for exercising his right to free speech and access to the courts.

6. The plaintiff has no adequate remedy at all to redress the wrongs described in the complaint and will continue to be irreparably harmed unless the Court issues an injunction.

Id. at 10-12.

As relief, the plaintiff seeks to have his institutional convictions expunged. Id. 12. In addition, the plaintiff seeks an injunction permanently prohibiting the defendants from further violating his rights. Id. The plaintiff also seeks compensatory damages in the sum of $5,000 and punitive damages in the same amount. Id. Finally, the plaintiff seeks the costs of this action and reasonable attorney's fees. Id.

**B.    The Plaintiff's Addendum to the Complaint**

In his addendum, the plaintiff seeks permission to amend his complaint under Rule 15 of the Federal Rules of Civil Procedure. Addendum (dckt. 19) at 1. Specifically, the plaintiff seeks permission to add Governor Joe Manchin and John Doe II as defendants in this action. Id. In support of this request, the plaintiff asserts that on March 5, 2008, he wrote a letter to Governor

Manchin complaining of staff misconduct by the librarian, Ovid Duncan. Id. at 2. In the letter, the plaintiff allegedly requested to remain anonymous out of fear of retaliation by the defendants. Id. However, on March 8, 2008, the plaintiff asserts that John Doe II from the Governor's Office, forwarded his unredacted correspondence to the DOC and the Huttonsville Correctional Center. Id. As a result, the plaintiff asserts that he was retaliated against by staff. Id.

Thereafter, the plaintiff asserts that he sent a second letter to Governor Manchin, advising the Governor that the plaintiff had been retaliated against because of the prior correspondence. Id. at 3. In that letter, the plaintiff requested Governor Manchin intervene on his behalf. Id. The plaintiff asserts that this letter was forwarded to Rubenstein, the director of the West Virginia DOC ("WVDOC"). Id. On March 28, 2008, the plaintiff received a letter from Rubenstein advising the plaintiff to file a grievance if he believed he was being retaliated against. Id.

On April 5, 2008, the plaintiff wrote a third letter to Governor Manchin. Id. In this letter, the plaintiff advised the Governor that he had received disciplinary sanctions as a result of the defendants' retaliation. Id.

In his addendum, the plaintiff asserts that Governor Manchin and John Doe II had an obligation and duty to protect him from the retaliatory acts of the defendants. Id. In addition, the plaintiff asserts that Governor Manchin and John Doe II acted in collusion with the other defendants. Id. at 3-4. Therefore, the plaintiff asserts that Governor Manchin and John Doe II violated his civil rights and should be added as defendants in this action. Id. at 4.

**C.   The Plaintiff's Motion for Summary Judgment**

In his motion for summary judgment, the plaintiff reargues the claims raised in his complaint and asserts that there are no genuine issues of material fact. In addition, the plaintiff asserts that the

defendants have no defenses against the claims raised in the complaint and that they are not entitled to qualified immunity. Therefore, the plaintiff asserts that he is entitled to judgment as a matter of law.

**D.    The Defendants' Response to the Plaintiff's Summary Judgment Motion**

In their response to the plaintiff's summary judgment motion, the defendants assert that the facts of this matter are in dispute. Moreover, the defendants argue that the plaintiff's motion is premature because at the time it was filed, the defendants had not yet been served, no response had been filed, and discovery had not yet taken place. For these reasons, the defendants request that the plaintiff's summary judgment motion be denied.

**E.    The Defendants' Motion to Dismiss**

In their motion to dismiss, the defendants request the dismissal of the plaintiff's complaint on the following grounds:

1.  The plaintiff has failed to state a claim upon which relief can be granted.

2.  The plaintiff's transfer from one West Virginia Department of Corrections Facility to another is not actionable.

3.  The defendants' policy prohibiting the exchange of items and articles of inmates through the mail does not violate the plaintiff's constitutional rights.

4.  The defendants have not violated the plaintiff's right to freedom of speech by punishing the plaintiff for insubordinate comments and name calling made to another inmate.

5.  The plaintiff's letter to the Governor is not protected speech.

6.  The defendants are not entitled to qualified immunity.

7.  Failure to exhaust administrative remedies.

**F.    The Plaintiff's Response**

In response to the defendants' motion to dismiss, the plaintiff reasserts the claims raised in

his complaint and argues that he has stated claims for which relief can be granted. Moreover, the plaintiff asserts that the defendants are wrong, and he can make a claim of retaliatory transfer. In addition, the plaintiff argues that the defendants have failed to address whether the policy directive under which he received disciplinary action was vague and ambiguous.

**G.   The Defendants' Reply**

The defendants' reply is merely a reiteration of their prior arguments.

**H.   The Plaintiff's Supplement**

On August 21, 2008, the plaintiff filed a letter which requests the Court consider a similar case from the Southern District of West Virginia. See Basham v. Parry, 5:04cv01335 (S.D.W.Va.). The plaintiff asserts that in Basham, the DOC overturned a disciplinary decision in which an inmate was found guilty of insolence/insubordination, for remarks made in a telephone communication to a third party. Attached to the plaintiff's request is a copy of the decision granting Mr. Basham's appeal and overturning the disciplinary decision. In that appeal, the Warden of the Mt. Olive Correctional Center, Thomas McBride, found that because Mr. Basham was not speaking directly to staff at the time the comments were made, he could not be guilty of insubordination/insolence. Specifically, Warden McBride found that to be guilty of insubordination, Mr. Basham would have had to personally direct his remarks to staff, not to a third party.

### III.   Standard of Review

**A.   Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly

granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.    <u>Motion for Summary Judgment</u>**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u> This means

that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, at 587 (citation omitted).

## IV.  Analysis

Upon a review of the pleadings, the undersigned finds that the plaintiff has raised the following grounds for relief:

1. His disciplinary sanctions for violating DOC Policy Directive 503.00 should be expunged because the policy is vague and ambiguous.

2. His disciplinary sanctions for violating DOC Policy Directive 503.00 should be expunged because they violate his right to free speech.

3. His disciplinary sanctions for violating DOC Policy Directive 325.00 should be expunged because they violate his right to free speech.

4. The plaintiff's transfer to the Huttonsville Correctional Center was retaliatory.

## A.  Vague and Ambiguous Policy Directives

Due process "requires certain minimal standards of specificity in prison regulations." <u>See Meyers v. Alldredge</u>, 492 F.2d 296, 310 (3d Cir. 1974). Therefore, it is unconstitutional to subject an inmate to disciplinary action for a violation of a vague and ambiguous regulation. <u>See Arey v. Robinson</u>, 819 F.Supp. 478, 490 (D.Md. 1992). Nonetheless, given the "fundamental difference between normal society and prison society . . . it is nearly impossible for prison authorities to

anticipate, through narrowly drawn regulation, every conceivable form of misconduct which threatens prison security." Meyers, supra. Thus, a policy is not vague and ambiguous unless a prisoner of normal intelligence could not reasonably determine that his conduct would violate the particular regulation. Arey at 491.

Here, the plaintiff actually complains of two different policy directives. The first policy, PD 503(V)(B)(2)(b) states: "Inmate to inmate letters must only be written correspondence and not contain any items, money or other articles." Because he attempted to circumvent this restriction by receiving a photograph of another DOC inmate through a third party, the plaintiff was charged with and received disciplinary sanction for a violation of PD 325.00-2.21, Misuse of Correspondence Regulations, which reads: "No inmate shall violate, or attempt to violate, any correspondence procedure of the institution/facility/center." The plaintiff, however, contends that he did not violate, nor attempt to violate, PD 503.00. The plaintiff asserts instead, that he knew he could not receive the photograph in a written correspondence from his girlfriend, so he obtained the photograph from his father. Therefore, the plaintiff asserts that PD 325.00-2.21 is vague and ambiguous as applied to his circumstances.

Neither PD 503.00 nor PD 325.00-2.21 is vague or ambiguous on its face. PD 503.00 clearly states that letters between inmates may not contain any item or article other than the written communication. A person of reasonable intelligence should know that this includes photographs. Moreover, PD 325.00-2.21 clearly mandates that attempting to violate any correspondence procedure will result in disciplinary action. Thus, a person of reasonable intelligence should know that violating or attempting to violate a correspondence regulation could result in disciplinary proceedings. Although the plaintiff concedes that he attempted to circumvent the photograph

restriction in PD 503.00, the plaintiff asserts that as he is permitted to receive photographs in non-inmate correspondence, and to retain such photographs in his personal property. Therefore, the plaintiff asserts that he did not violate any correspondence regulations when he received the photograph from a third party.

Although 325.00-2.21 is not vague or ambiguous on its face, the undersigned believes that the regulation may be vague and ambiguous as applied in these circumstances. The plaintiff is correct. He is not prohibited from retaining photographs in his personal property. Moreover, the Court can find no regulation which prohibits an inmate from receiving photographs from a third party. The only regulation related to this issue, PD 503.00, pertains only to inmate to inmate letters. However, there was no inmate to inmate exchange of any kind in this instance. Thus, it does not appear that the plaintiff violated or attempted to violate any regulation in this case. To the contrary, it appears that the plaintiff was careful not to violate the regulations. PD 325.00-2.21 does not address circumventing DOC policy. Thus, it is not clear that a person of reasonable intelligence would know that what the plaintiff did in this case was wrong. Accordingly, it appears that a genuine issue of material fact remains as to whether PD 325.00-2.21 is vague and ambiguous as applied in these particular circumstances.

**B.  <u>First Amendment Right to Free Speech</u>**

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987). Instead,

> [a] prison inmate retains those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit first amendment interests must be analyzed in terms of legitimate policies and goals of the corrections system to whose custody and care the prisoner has been committed . . .

Pell v. Procunier, 417 U.S. 817, 822 (1974).  Legitimate penological goals include "deterrence of crime, rehabilitation, and preservation of internal security."  Id. at 822-23.

In Procunier v. Martinez, 416 U.S. 396 (1974), the Supreme Court of the United States held that prison mail could be censored if (1) the regulation in question "further(s) an important or substantial government interest unrelated to the suppression of expression; and (2) the regulation in question "is no greater than is necessary . . . to the protection of the particular governmental interest involved."  See Thornburgh v. Abbott, 490 U.S. 410, 408 (1989) (citing Martinez at 413-14).  When balancing an inmate's rights against the policies and goals of the penal institution, the Court must give prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," in light of their professional expertise.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979).

However, "[p]rison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements."  Martinez at 413. Nonetheless, a prisoner has no protected First Amendment right "to address prison officials in a disrespectful or abusive manner, or to engage in other forms of protest which impose clear and present danger of disorder and violence."  Scarpa v. Ponte, 638 F.Supp. 1019, 1028 (D. Mass. 1986) (citing Savage v. Snow, 575 F.Supp. 828, 836 (S.D.N.Y. 1983)).

1.  Case Number SMC-07-0389-H

In this case, the plaintiff was charged with a violation of PD 325.00-2.21, Misuse of Correspondence Regulations, for attempting to circumvent PD 503.00.  The plaintiff asserts that it violated his right to free speech to be punished for seeking to receive a picture of his girlfriend.  In

actuality though, the plaintiff was not punished for his speech. The plaintiff was punished for attempting to violate the correspondence rules. The picture of the plaintiff's girlfriend was not prohibited, and he was not charged with possessing it. Instead, he was charged because he attempted to circumvent DOC regulations in an attempt to gain access to the picture. Clearly, the DOC has a legitimate interest in insuring that its rules and regulations are followed. Because the photograph was not censored, there was no violation of the plaintiff's right to free speech with regard to case number SMC-07-0389-H.

    2.   <u>Case Number SMC- 07-0413-H and Case Number SMC-07-0425-H</u>

In case number SMC-07-0413-H the plaintiff was charged with a violation of PD 325.00-2.32 for making rude comments and accusations about Steward in a letter to his girlfriend Terri. In case number SMC-07-0425-H, the plaintiff was again charged with a violation of PD 325.00-2.32 for making accusations and rude comments against Steward. The plaintiff asserts that his statements in each letter were protected under the First Amendment and that he could not be punished merely for his unflattering opinions because they were not directed directly at Steward.

PD 325.00-2.32 states: "An inmate shall not be insubordinate or insolent to a staff person. No inmate shall slander any person."[1] In the first letter, the plaintiff stated: "[i]ts (sic) apparent by reading the write-up the woman at the post office is reading all my mail from you, Dad and whoever. I guess her personal life is such a failure, boring, including relationships that she has nothing better to do than to make someone else's life miserable. People like that who hate themselves and their own circumstances in life. Or perhaps she was abused as a child or more likely done wrong by men

---

[1]Whether the inmates written comments constitute "slander" within the meaning of the law or the regulation is not directly before the Court.

in her past so she has to take it out on us. But no matter, nothing she can do to me can make my life unhappy." In the second letter, the plaintiff stated: "the hearing officer and the PO lady was in cahoots so I'm not surprised I was found guilty. Think she needs Prozac or some other such drug. Got to have mental problems without doubt. Perhaps she is a voyeur. I'll start addressing your letters, Hi Terri and Karen."

Although the plaintiff has no absolute right to engage in insubordinate speech, there is no indication in either letter that the plaintiff was directing his comments directly toward the prison staff or that the plaintiff's derogatory and offensive comments were a threat to security. Moreover, the fact that the plaintiff may have known that Steward or another correctional officer would read his comments is insufficient to justify censorship of his letters. See Loggins v. Delo, 999 F.2d 364 (8th Cir. 1993) (inmate could not be disciplined for writing derogatory comments about prison officials in a letter to his brother); Brooks v. Andolina, 826 F.2d 1266, 1268 (3d Cir. 1987) (First Amendment violated where prisoner disciplined for statements made about a corrections officer in a letter to the NAACP); McNamara v. Moody, 606 F.2d 621 (5th Cir.) cert. denied 447 U.S. 929 (1980) (disciplinary proceedings for coarse and offensive remarks in an outgoing letter violates First Amendment where there is no showing that the remarks lead to the break down of security and discipline); Bressman v. Farrier, 825 F.Supp. 231, 234 (N.D. Iowa 1993) (disciplining a prisoner for offensive comments in a letter to his brother violates the First Amendment).

Had these comments been made directly to Steward, either verbally or in writing, then disciplinary proceedings for such comments would not offend the First Amendment. See Leonard v. Nix, 55 F.3d 370, 375-76 (8th Cir. 1995). However, as previously noted, merely because the plaintiff knew Steward or any other corrections official would read these letters, is not sufficient

grounds to justify disciplinary action.  See Bressman, 825 F.Supp. at 234.  Accordingly, it appears that the plaintiff's First Amendment rights may have been violated with regard to case number SMC-07-0413-H and case number SMC-07-0425-H.   Moreover, the plaintiff's right to make offensive, but non-threatening statements in written correspondence was clearly established prior to 2007.  See Thornburgh, 490 U.S. at 411-13; Martinez, 417 U.S. at 822.  Thus, the defendants are not entitled to qualified immunity as to this claim.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (government officials performing discretionary functions are protected from civil damages for "conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); Saucier v. Katz, 533 U.S. 194, 201 (2001) (when determining if a defendant is entitled to qualified immunity, the court must first consider (1)" in the light most favorable to the party asserting injury, do the facts alleged show the officer's conduct violated a constitutional right," and if so, (2) was the right clearly established at that time).

3.  Case Number HCC-08-0338-T

In this case, the plaintiff was charged with violating PD 325.00-2.17, Fraudulent Misrepresentation, for the content of a letter he sent to Governor Manchin concerning the librarian, Ovid Duncan ("Duncan").  In the letter, the plaintiff complained that Duncan "wasted state funds by storing and/or disposing of law books; abused inmates, and was caught watching pornography on the library computers."  Complaint and Motion (dckt. 2) at 9, n. 8.   In the incident report, the plaintiff was charged with making false accusations against Mr. Duncan in an attempt to deceive the Governor's Office.  The plaintiff asserts that the content of this letter was protected speech and the disciplinary action taken against him was therefore, unconstitutional.

In the complaint, the plaintiff notes that he was found guilty of his offense on April 1, 2008.

Id. at 10. Thus, at the time this case was filed, April 7, 2008, he had not yet completed his administrative remedies. However, the plaintiff asserts that because this disciplinary report contains the same issue as the others, a violation of his right to free speech, this claim should be treated as exhausted. Moreover, in his subsequent filings, the plaintiff asserts that this claim has since been exhausted.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural

---

[2] Id.

18

requirements of the prison grievance system.  Id. at 2393.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues.  The first level involves filing a G-1 Grievance Form with the Unit Supervisor.  If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator.  Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Here, the plaintiff concedes in his complaint that he did not fully exhaust his administrative remedies with regard to case number HCC-08-0338-T prior to filing suit.  Thus, this claim must be dismissed for the failure to exhaust.  Moreover, the fact that plaintiff has since exhausted this claim is inapposite, as is the plaintiff's argument that he raises the same claim as in his other disciplinary challenges.  Exhaustion is a prerequisite to suit.  Therefore, exhaustion during the pendency of this case does not save the claim.  Moreover, each disciplinary proceeding is a separate and distinct charge that must be grieved.  Exhausting related charge, even if it raises the same issue, does not exhaust other charges.

**C.  Retaliation**

A prisoner may state a claim of retaliatory transfer if the decision to transfer him was based on the inmate's exercise of a constitutionally protected right.  See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) (to state a retaliation claim, a plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right).  Thus, the plaintiff is correct in that he may challenge his transfer on these grounds.  However, this claim is clearly not

exhausted and must be dismissed for that reason.  <u>See</u> Defendants' Memorandum (dckt. 34) at 5; Defendants' Reply (dckt. 39) at 4) (wherein the defendants assert that the plaintiff has never filed a grievance regarding his transfer, note that the plaintiff does not dispute this fact and that the plaintiff has failed to provide any documentation proving exhaustion of this claim).

**D.    The Plaintiff's Request for Injunctive Relief**

In his complaint, the plaintiff seeks to have the defendants permanently enjoined from further violating his rights, privileges and immunities guaranteed under the Constitution.  Complaint (dckt. 2) at 12.

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in <u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189 (4th Cir. 1977).  In making this analysis, the Court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

<u>Direx Israel, Ltd v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).  The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction."  <u>Id.</u> (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it.  <u>Id.</u>  The required harm "must be neither remote nor speculative, but actual and imminent."  <u>Id.</u> (citations and internal quotation omitted).  If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an

injunction is not granted and the likelihood of harm to the defendant if it is granted.  Id. (citation

omitted).  If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary

injunction will be granted if the plaintiff has raised questions going to the merits so serious,

substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more

deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir.

1991) (citations omitted).  However, "[a]s the balance tips away from the plaintiff, a stronger

showing on the merits is required." Id. (citation omitted).

Here, the plaintiff makes no specific request for injunctive relief.  Instead, he requests an

injunction which would prohibit the defendants from "further violating his rights."  Such a request

is vague and over broad.  Moreover, the plaintiff already has a right to be free from such conduct,

even without an injunction from this Court.  The plaintiff alleges no irreparable harm, and certainly

not imminent harm.  In addition, the undersigned finds that granting such a broad request would

greatly harm the defendants' ability to perform their duties and that the failure not to grant such a

request would only minimally, if at all, harm the plaintiff.  Therefore, although the plaintiff has

established, at this point, a possibility that he could prevail on the merits of his remaining claims,

the balancing of factors tips decidedly in the favor of the defendants and the Court should not grant

the plaintiff the injunctive relief he requests.

**E.   The Individual Defendants**

In the complaint, the plaintiff names sixteen individual defendants.  However, not each

defendant was personally involved in the remaining claims.  For instance, defendant Springston was

involved only in the alleged retaliatory transfer.  Thus, since that claim is due to be dismissed, so

must defendant Springston.  Likewise, defendants Miller, Gragg, Scott and Tiege, were only

involved in the charges related to case number HHC-08-0338-T, which has been recommended for dismissal for the failure to exhaust. Thus, those defendants should also be dismissed.

Moreover, since the undersigned has recommended that the plaintiff's request for injunctive relief be denied, the WVDOC must also be dismissed because the WVDOC is not otherwise a proper defendant in a claim for civil damages. Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983).

In addition, the only defendants who were personally involved in the charges and sanctions related to the remaining claims are defendants Steward, Anderson, Hill, Doe, Hale, Fox, Waid and Rubenstein. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (liability under § 1983 is "personal, based upon each defendant's own constitutional violations."). Nonetheless, Fox, Waid and Rubenstein were only personally involved to the extent that they denied the plaintiff's grievances. That type of conduct, however, is not the type of personal involvement required to state a claim under § 1983. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Nor can respondeat superior form the basis of a claim for a violation of a constitutional right under § 1983. Rizzo v. Good, 423 U.S. 362 (1976). Accordingly, the only defendants that remain are Steward, Anderson, Hill, Doe and Hale.

**F.   The Plaintiff's Addendum to Complaint**

In his addendum, the plaintiff seeks to add Governor Manchin and John Doe II ("Doe II") as defendants in this action.  Specifically, the plaintiff asserts that Doe II, an employee of the Governor's Office, forwarded a letter the plaintiff had sent to Governor Manchin to the DOC and Huttonsville Correctional Center, even though the letter contained complaints of staff misconduct and the plaintiff had requested to remain anonymous.  Moreover, when the plaintiff subsequently sought help from the Governor for the alleged retaliation and discipline he suffered, his letters were again forwarded to the DOC and the Huttonsville Correctional Center.  Thus, the plaintiff seeks to add Governor Manchin and Doe II as defendants in this action, for failing to protect him from the defendants retaliatory acts and for acting in collusion with the other defendants.

The plaintiff provides no evidence that Governor Manchin or Doe II acted in collusion with the other defendants.  At best, the Governor's Office forwarded the plaintiff's letters to those who were most able to investigate the plaintiff's complaints.  Moreover, neither the Governor nor Doe II was involved in any retaliatory acts against the plaintiff and as previously noted, *respondeat superior* cannot form the basis of a constitutional claim under § 1983.  Thus, the plaintiff has failed to state a claim against Governor Manchin and Doe II and even if he had, the plaintiff has not asserted, much less established, that he exhausted those claims.  Accordingly, the plaintiff's request to add Governor Manchin and Doe II as defendants in this action should be denied.

**G.   The Plaintiff's Motion for Summary Judgment**

At the time the plaintiff filed his motion for summary judgment, the defendants had not yet been served with a copy of the complaint and no responsive pleading had been filed.  Accordingly, the plaintiff's motion was filed prematurely.  Moreover, for the reasons stated herein, there are

genuine issues of material fact that remain and the plaintiff is not entitled to judgment as a matter of law.  Therefore, the plaintiff's motion should be denied.

## V.  **Recommendation**

For the reasons set forth in this Opinion, the undersigned recommends the following:

▸ The plaintiff's Motion for Preliminary Injunction (dckt. 2) be **DENIED**.

▸ The plaintiff's Addendum to Complaint (dckt. 19), construed as a motion to amend, be **DENIED**.

▸ The plaintiff's Motion for Summary Judgment (dckt. 20) be **DENIED**.

▸ The defendants' Motion to Dismiss (dckt. 33) be **GRANTED in part** and **DENIED in part**.  Specifically, the undersigned recommends that the motion be granted in so much as it requests that the plaintiff's First Amendment claim with regard to disciplinary action SMC-07-0389-H be dismissed for the failure to state a claim. Additionally, the undersigned recommends that the motion be granted to the extent that it requests that the plaintiff's First Amendment claim with regard to disciplinary action HCC-08-0338-T and the plaintiff's retaliatory transfer claim be dismissed without prejudice for the failure to exhaust.  On the other hand, the undersigned recommends that the defendants' motion be denied to the extent that it seeks dismissal of the plaintiff's claim that disciplinary action SMC-07-0389-H is vague and ambiguous as applied to the particular circumstances of this case and that the plaintiff's First Amendment rights were violated with respect to disciplinary actions SMC- 07-0413-H and  SMC-07-0425-H.

▸ That defendants Springston, Miller, Tiege, Gragg and Scott be **DISMISSED without prejudice** as defendants in this action.

▸ That defendants Fox, Waid, Rubenstein and the West Virginia Division of Corrections  be **DISMISSED with prejudice** as defendants in this action.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections.  A copy of any  objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.    28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: December 22, 2008.

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE