# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LAWRENCE SCIBLE,

    **Plaintiff,**

v.              **Civil Action No. 1:08cv100**
                  **(Judge Keeley)**

KAREN STEWARD, WILLIAM
ANDERSON, JOHN DOE AND
WILLIAM HALE,

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Factual and Procedural History

On April 7, 2008, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants[1] pursuant to 42 U.S.C. § 1983. (Dckt. 1). That same day, the plaintiff also filed a Motion for Preliminary Injunction. (Dckt. 2). On April 9, 2008, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $9.83. (Dckt. 12). He paid his initial partial fee on April 23, 2008. (Dckt. 14).

On April 24, 2008, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted at that time. Accordingly, the Clerk was directed to issue summonses for the defendants. The defendants were served by the United States Marshal Service.

---

[1]The original complaint also named the following other defendants: Robert Hill, Donnie Springston, William Fox, Jim Rubenstein, Teresa Waid, Robin Miller, Sandy Tiege, James Gragg, Brian Scott and the West Virginia Division of Corrections. Those defendants were dismissed on January 13, 2009.

On April 30, 2008, the plaintiff filed an Addendum to the Complaint and a Motion for Summary Judgment. (Dckts. 19 & 20). On May 21st, the defendants filed a response to the plaintiff's summary judgment motion, Motion to Dismiss the complaint and a Memorandum in Support. (Dckts. 32- 34). Because the plaintiff had been proceeding *pro se* at that time, the court issued a Roseboro Notice on May 23, 2008, advising the plaintiff of his right to file a response to the defendants' dispositive motion. (Dckt. 35). The plaintiff filed a response on June 6, 2008, to which the defendants replied on June 13, 2008. (Dckts. 37 & 39).

On December 22, 2008, the undersigned issued an Opinion/Report and Recommendation ("R&R") which recommended that the plaintiff's motions for summary judgment and a preliminary injunction be denied. (Dckt. 48). The undersigned further recommended that the plaintiff's addendum to the complaint be construed as a motion to amend and be denied. Additionally, it was recommended that the defendants' motion to dismiss be granted-in-part and denied-in-part. Finally, the undersigned recommended that all defendants, except those named above, be dismissed with prejudice. On January 13, 2009, District Judge Irene M. Keeley, adopted the R&R in full and referred the action back to the undersigned for further proceedings. (Dckt. 51)

After the parties completed discovery, the remaining defendants filed a motion for summary judgment and memorandum of law in support of the motion. (Dckt. 81 & 82). In response to a Roseboro Notice issued July 2, 2009, the plaintiff filed a response to the motion on July 15, 2009. (Dckts. 84 & 86). The defendants filed their reply on July 30, 2009. (Dckt. 87).

After a review of the file on August 10, 2009, the Court ordered that this case be set for oral argument on the defendants' summary judgment motion. (Dckt. 88).[2] The plaintiff was appointed

---

[2]The hearing was later rescheduled. (Dckt. 91).

counsel and a hearing was held on October 27, 2009. (Dckts 103 & 113). After the hearing, the

Court issued an Order Confirming Oral Findings of the Court which stated that if the parties could

not reach a settlement by November 14, 2009, the plaintiff had until November 30, 2009, to file a

cross motion for summary judgment, and the defendants had until December 12, 2009, to file a

response. (Dckt. 115). Upon the request of the parties, the settlement deadline was extended until

December 31, 2009. (Dckts. 117 & 119). Therefore, the plaintiff's summary motion deadline was

extended until January 8, 2010, and the defendants' response deadline extended until January 22,

2010. (Dckt. 119).

On December 29, 2009, the defendants filed a Supplemental Motion for Summary Judgment.

(Dckt. 120). The plaintiff filed his response on January 8, 2010, and the defendants filed their reply

on January 20, 2010. (Dckts. 124 & 128).

Because no settlement could be reached, on January 8, 2010, the plaintiff filed a cross motion

for summary judgment. (Dckt. 122). The defendants filed their response on January 22, 2010.

(Dckt. 129).

On January 28, 2010, the defendants filed a Motion to Dismiss. (Dckt. 130). The plaintiff

filed his response and memorandum in support on February 5, 2010. (Dckt. 133 & 134). By Order

of the Court, no further briefing is permitted. (Dckt. 132).

This case is before the undersigned for a report and recommendation on the parties' pending

motions.

## II.   The Pleadings

### A.   Initial Report and Recommendation

As mentioned above, the undersigned's initial R&R both granted in part and denied in part

the defendants' Motion to Dismiss. Specifically, the undersigned recommended that the motion be granted in so much as it requested that the plaintiff's First Amendment claim with regard to disciplinary action SMC-07-0389-H be dismissed for failure to state a claim. Additionally, the undersigned recommended that the motion be granted to the extent that it requested that the plaintiff's First Amendment claim with regard to disciplinary action HCC-08-0338-T and the plaintiff's retaliatory transfer claim be dismissed without prejudice for the failure to exhaust. The undersigned also recommended that the defendants' motion be denied to the extent that it seeks dismissal of the plaintiff's claim that disciplinary action SMC-07-0389-H is vague and ambiguous as applied to the particular circumstances of this case, and that the plaintiff's First Amendment rights were violated with respect to disciplinary actions SMC-07-0413-H and SMC-07-0425-H.[3]

Thus, two issues remain in this case. The first issue relates to disciplinary action SMC-07-0389-H: the plaintiff's write-up by prison officials for violating a Division of Corrections ("DOC") policy which states that inmate to inmate correspondence may only be written and whether the plaintiff can establish the regulation was vague and ambiguous as applied to the particular circumstances of his case. The second issue concerns whether the plaintiff's First Amendment rights were violated with respect to disciplinary actions SMC-07-0413-H and SMC-07-0425-H, in which the plaintiff was punished for insubordination toward staff for comments made by him in letters to an inmate at another DOC facility.

**B.**     **Defendants' Motion for Summary Judgment**

   1.   The Motion

In their original motion for summary judgment, the defendants assert that, as to the first

_____

[3]For additional information on the dismissed complaints see dckt. 48.

issue, policy 503.00 is not unconstitutionally vague or ambiguous[4] and was not applied in a vague or ambiguous manner. Furthermore, the defendants assert that the plaintiff had knowledge and notice of the DOC policy, knew what was prohibited, and intentionally set out to trade an item with another inmate despite the policy.

As to the second issue, the defendants assert that the DOC may impose certain limitations on the rights of incarcerated inmates. While recognizing that inmates retain First Amendment rights while incarcerated, the defendants assert that "these rights must be exercised with due regard for the inordinately difficult undertaking that is a modern prison administration." Thornburgh v. Abbot, 490 U.S. 401 (1989). The nature of prison life thus affords prison officials "broad discretion," especially where "the regulation at issue concerns the entry of materials into the prison." *Id.* Defendants assert that, because the plaintiff's comments in his letters were made directly to defendant Karen Steward, the disciplinary hearings for such insubordinate comments do not offend the First Amendment. Defendants assert that these comments are not protected speech because they were written to another inmate and not a person outside the prison system. Defendants further contend that the censorship of an inmate's mail is justified because it reasonably relates to a legitimate penological interest: that inmate to inmate correspondence raises legitimate security concerns for prison officials.

In addition, the defendants assert that the plaintiff has failed to state any claim against defendant William Anderson ("Anderson"), that Anderson was not involved in any violation of the plaintiff's rights, and that he should be dismissed from this action. The defendants also assert that

---

[4]According to defendants, the policy states: "Inmate to inmate letters must be only written correspondence and not contain any items, money or other articles." Dckt. 81 at p. 2.

defendant William Hale ("Hale") should be dismissed on the basis of judicial immunity. Specifically, the defendants argue that because Hale served as the Magistrate in the plaintiff's disciplinary proceedings, he is entitled to immunity as a member of a disciplinary committee in the prison system.

Further, all of the defendants assert that they are entitled to qualified immunity on all of the plaintiff's claims. In support of this contention, the defendants argue that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[5] In the instant case, the defendants assert that the plaintiff is suing prison employees who are charged with the job of rehabilitating the plaintiff as well as keeping him safe. As these types of government officials are performing their discretionary duties to provide rehabilitation and security in prison facilities, the defendants assert they must be afforded the protection contemplated under the principles of immunity. Finally, defendants assert that the plaintiff's remaining claims are without merit and cannot be substantiated with evidence. Thus, the defendants ask the court to defer to the judgment of the prison officials in the operation of their prison, especially concerning matters of security, order, and rehabilitation.

2. The Plaintiff's Response

The plaintiff seeks denial of the motion for summary judgment for several reasons. First, the plaintiff asserts that the DOC's misuse of the correspondence regulation is unconstitutionally vague and ambiguous as applied in these circumstances. The plaintiff asserts that in order to violate

---

[5]Quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1928); Prichett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

the regulation, an inmate must enclose an item in a letter other than written correspondence to another inmate. He then asserts that as he did not enclose anything other than written correspondence, he should not have been charged under policy 325.00-21.[6] The plaintiff asserts that, rather than intentionally violating the rule, he was careful not to violate the regulations. Because of this ambiguity, the plaintiff asserts that a person of reasonable intelligence would not have known what he did was wrong, and thus, a genuine issue of material fact exists.

Next, the plaintiff asserts that the defendants violated his First Amendment right to freedom of speech with regard to punishment for statements made in his outgoing mail. Specifically, he states that prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions. The plaintiff also asserts that the defendants are intentionally misrepresenting his previous testimony. He then states that his comments about defendant Steward, while admittedly unflattering, were protected speech regardless of whether they were written to another inmate or to a person outside the prison system. Furthermore, the plaintiff asserts that he has not failed to state a claim against defendant Anderson; that his claims against defendant Hale can be substantiated, thus not entitling him to summary judgment; and that the defendants are not entitled to qualified immunity. The plaintiff concludes by asserting that his remaining claims have merit and should proceed to trial.

3. The Defendants' Reply

In their reply, the defendants reassert the following claims:

a. The DOC's inmate to inmate correspondence policy is not unconstitutionally vague

---

[6]Policy states: No inmate shall violate, or attempt to violate, any correspondence procedure of the institution/facility/center.

or ambiguous as applied in these circumstances;

b.      The defendants did not violate the plaintiff's First Amendment right to freedom of speech with regard to punishment for the letter containing inflammatory and insubordinate comments directed to Supervisor Karen Steward;

c.      The plaintiff has failed to state a claim against Anderson;

d.      The claims against Hale cannot be substantiated and Hale is entitled to summary judgment; and

e.      The defendants are entitled to qualified immunity.

**C.  The Defendants' Supplemental Summary Judgment Motion**

1.  <u>The Motion</u>

In their supplemental motion for summary judgment, the defendants assert that they are entitled to judgment as a matter of law with regard to the plaintiff's claim that DOC policy 503.00(v)(b)(1)(b) is vague and ambiguous as applied to his circumstances because the plaintiff cannot show that his punishment was atypical. More specifically, the defendants assert that in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the United States Supreme Court held that "[n]either a prison regulation nor the due process clause affords an inmate a protective liberty interest if the punishment does not (1) lead to an atypical confinement or (2) the chance of the misconduct finding would affect any later decision whether to grant parole." Memorandum (dckt. 121) at 4. Because the plaintiff received only 30-day loss of privileges, suspended, and they have offered to expunge the incident report, the defendants assert that the plaintiff cannot succeed on his due process claim, and they are entitled to judgment as a matter of law.

## 2. The Plaintiff's Response

In his response, the plaintiff asserts that <u>Sandin</u> is inapplicable to the issues raised in this case. In support of this contention, the plaintiff asserts that the issue in <u>Sandin</u> was not whether an inmate could be disciplined for violating a policy that was vague and ambiguous. Instead, the plaintiff argues that <u>Sandin</u> addressed the type of punishment received by a prisoner for violating a prison policy, not whether it was unconstitutional to punish the prisoner in the first instance.

## 3. The Defendants' Reply

In their reply, the defendants assert that the plaintiff's vague and ambiguous claim is grounded in the due process clause. Because <u>Sandin</u> holds that "[a]n inmate cannot assert a claim under the Due Process Clause unless the subject punishment leads to an atypical confinement and/or adverse impact on the chance for parole," the defendants assert that the plaintiff's due process claim must fail. Reply (dckt. 128) at 2. Moreover, although they concede that <u>Sandin</u> did not specifically address vague and ambiguous policy claims, the defendants assert that <u>Sandin</u> controls because it addresses an inmate's claim that he was wrongfully punished. Thus, the defendants assert that, before he proceeds further, the plaintiff must show that his punishment lead to atypical confinement and/or has an adverse impact on his chance for parole.

## D. **The Plaintiff's Motion for Summary Judgment**

### 1. The Motion

With regard to his disciplinary infraction for attempting to violate WVDOC mail regulations, in his motion for summary judgment, the plaintiff concedes that DOC policy directives 503(v)(B)(2)(b) and 325.00-2.21 are clear and unambiguous on their face. Moreover, he contends that the following facts are undisputed: (1) his girlfriend, Terri Barker, was a DOC inmate at the

time in question; (2) he attempted to send Ms. Barker a letter; (3) that letter did not contain any items, money or other articles; (4) WVDOC inmates are allowed to possess photographs, subject to certain guidelines; (5) the plaintiff wanted a picture of Ms. Barker and knew he could not get one directly from her; (6) the plaintiff attempted to circumvent DOC policy by attempting to obtain the photograph from a third party; (7) there was no inmate to inmate exchange of any photograph in the letter for which he was disciplined; (8) the plaintiff purposely sought the photograph through a third party to avoid violating any DOC policy; and (9) WVDOC policy does not prohibit inmates from receiving photographs through the mail, except from other inmates.  The plaintiff asserts that these undisputed facts establish that he did not violate or attempt to violate any WVDOC policy.  The plaintiff asserts that, at best, he attempted to circumvent the rules and that there is no policy prohibiting such conduct.  Thus, the plaintiff asserts that a person of reasonable intelligence would not have known that what he attempted to do was wrong.  Accordingly, the plaintiff asserts that the policies in question, as applied to him in these circumstances, are vague and ambiguous.

With regard to his First Amendment free speech claims, the plaintiff asserts that the Supreme Court has explicitly held that comments such as the ones he made, cannot be regulated.  More specifically, the plaintiff asserts that it is well established that prison officials cannot discipline an inmate for defamatory or factually inaccurate statements about prison officials that are made to third parties.  Further, the plaintiff asserts that while he knew Ms. Steward might read his outgoing mail, and in fact, was likely to do so, he did not "direct" his statements at her.  Instead, his statements were made to Ms. Barker.  Thus, the plaintiff asserts that his rights were clearly violated.  Moreover, because the law is so well established in this area, the plaintiff contends that the defendants are not entitled to qualified immunity.

## 2. The Defendants' Response

With respect to the first issue, the defendants assert that because the policy in question clearly prohibited an inmate to inmate exchange of photographs, and the plaintiff expressly set out to "get around" that regulation by having the picture sent through a third party, he clearly intended to violate the rules and was subject to punishment. The defendants assert that the plaintiff's actions support their contention that the plaintiff knew what he was doing was wrong, and not that the policy is vague and ambiguous. In addition, the defendants assert that "[p]utting [in] a middle man . . . does not change the fact that the plaintiff was attempting to mail an item, not a written letter, with another inmate." Reply (dckt. 129) at 5.

With respect to the second issue, the defendants assert that the Supreme Court's decisions in Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1996), bar the plaintiff from pursuing his claim under § 1983. Specifically, the defendants assert that "a claim by a state prisoner for damages caused by acts, which if proven would render his conviction invalid, were not cognizable under 42 U.S.C. § 1983 in the absence of showing that the conviction has been invalidated." Response (dckt. 129) at 6. Therefore, the defendants assert that the plaintiff must show that his disciplinary convictions have been invalidated before he can proceed under § 1983.

In the alternative, the defendants assert that there is no dispute that the statements made by the plaintiff about Ms. Steward were insubordinate. Moreover, the defendants argue that there is an issue of fact as to whether or not the statements were "directed" at Ms. Steward. Further, the defendants assert that this case differs from the ones cited by the plaintiff because Ms. Barker was not a disinterested third party, but another WVDOC inmate. Thus, censoring such comments does not offend the First Amendment because they further substantial governmental interests.

In addition, the defendants argue that regardless of whether the plaintiff's rights were violated in this instance, the defendants are entitled to qualified immunity because it was not established prior to 2007, that an inmate had the right to make offensive and inflammatory statements about prison staff to another inmate.

## E.   **The Defendants' Motion to Dismiss**

### 1.   The Motion

In this motion, the defendants reiterate the argument made in their response, that the plaintiff is barred by <u>Heck</u> and <u>Edwards</u> from pursuing this § 1983 action.

### 2.   The Plaintiff's Response

In his response, the plaintiff asserts that the discipline imposed on him had no effect on his original conviction or sentence.  Response (dckt. 134) at 4.  He also contends that the relief he seeks does not challenge the fact or duration of his confinement in any way.  *Id.*  Therefore, he asserts that he is not barred by <u>Heck</u> or <u>Edwards</u> from pursuing the claims raised in his complaint.  *Id.*

In support of his position, the plaintiff asserts that while it is well-established that a prisoner cannot bring a § 1983 action to obtain restoration of good time credits, it is equally well-established that an inmate may otherwise use § 1983 to obtain a declaration that certain disciplinary procedures were invalid.  *Id.* at 5-6.  The plaintiff further asserts that because he did not lose good time credit as part of his disciplinary punishment, the relief he requests has no effect on his underlying conviction or sentence, or the fact or duration of his confinement.  *Id.* at 7.  Thus, the plaintiff contends that <u>Heck</u> and <u>Edwards</u> are inapplicable and that he is not barred from challenging the procedures employed during his disciplinary proceedings.  *Id.*

### III.  Standards of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must "contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*  (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material

facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV.   Analysis

### A.   The Defendants' Motion to Dismiss

Before addressing the merits of the plaintiff's claims, the Court must first address the argument raised in the defendants' Motion to Dismiss. In their motion, the defendants assert that the Supreme Court's decisions in Heck v. Humphrey and Edwards v. Balisok, bar the plaintiff from pursuing his First Amendment claim under § 1983. Specifically, the defendants assert that "a claim by a state prisoner for damages caused by acts, which if proven would render his conviction invalid, were not cognizable under 42 U.S.C. § 1983 in the absence of showing that the conviction has been invalidated." Response (dckt. 129) at 6. Thus, the defendants assert that the plaintiff must show that his disciplinary convictions have been invalidated before he can proceed with a § 1983 action.

In his response to the defendants' motion to dismiss, the plaintiff asserts that the discipline imposed on him with respect to the disciplinary reports had no effect on his original conviction or sentence. Response (dckt. 134) at 4. In addition, the plaintiff contends that his § 1983 action does not challenge the fact or duration of his confinement in any way. *Id.* Therefore, he asserts that he

is not barred by Heck or Edwards from pursuing the claims raised in his complaint. *Id.*

In support of his position, the plaintiff asserts that while it is well-established that a prisoner cannot bring a § 1983 action to obtain restoration of good time credits, it is equally well-established that an inmate may otherwise use § 1983 to obtain a declaration that certain disciplinary procedures were invalid. *Id.* at 5-6. The plaintiff further asserts that because he did not lose good time credit as part of his disciplinary punishment, the relief he requests has no effect on his underlying conviction or sentence, or the fact or duration of his confinement. *Id.* at 7. Thus, the plaintiff contends that Heck and Edwards are inapplicable and that he is not barred from challenging the procedures employed during his disciplinary proceedings. *Id.*

This Court agrees with the plaintiff that Heck and Edwards are not applicable to the circumstances of this case. Here, the plaintiff did not lose good time credit as part of his disciplinary sanctions. Thus, the relief he requests has no effect on his underlying conviction or sentence, or the fact or duration of his confinement. Therefore, he is entitled to challenge the procedures employed in his disciplinary proceedings under § 1983. See Heck v. Humphrey, 512 U.S. 477, 487 (if a successful § 1983 action will not invalidate an outstanding criminal judgment, it should be allowed to proceed); Wolff v. McDonnell, 418 U.S. 539, 555 (1974) (although a prisoner may not use § 1983 to obtain the restoration of good time credits lost in a disciplinary proceeding, he may use § 1983 to challenge the validity of those proceedings); Preiser v. Rodriguez, 411 U.S. 475 (1973) (a § 1983 action does not lie when a prisoner challenges the fact or duration of his confinement). Accordingly, the defendants' motion to dismiss should be denied.

**B.   Defendants' Anderson and Hale**

　　1. Defendant Anderson

There is some question as to whether Anderson should still be a party to this suit. Plaintiff claims that defendant Anderson should be involved in this matter because he is named as the shift commander on the violation report. According to the plaintiff, without Anderson's consent, the violation report would have been dismissed. With his consent, the plaintiff contends Anderson approved the prosecution of the incident report, in violation of his constitutional rights.

Although the defendants initially argued that Anderson had not been involved in the violation report in any manner, the report itself reveals that Anderson had in fact signed the report as the shift commander. Defendants' Memorandum (dckt. 82) at 12; Plaintiff's Response (dckt. 86) at Ex. G. Thus, the defendants now argue that even if Anderson's name appears on the report, it is there only because Anderson had been on duty at the time the report was written. Additionally, the defendants argue that Anderson had no part in the decision to pursue further processing of the report. Defendants' Reply (dckt. 87) at 6. In other words, the defendants assert that Anderson did not "approve" the incident report, but merely signed it because he happened to be the shift commander on duty at the time. *Id.* Because the plaintiff has only assumed that Anderson is an appropriate defendant by the presence of his signature on the report, the defendants assert that the plaintiff has not established that Anderson participated in a violation of his constitutional rights. *Id.*

It is clear that Anderson was the shift commander on duty at the time of the incident and that he signed the report for that reason. There is no evidence, however, to suggest that Anderson was in any other way involved in the further processing of that report. Quite simply, the uncontroverted evidence shows that Anderson merely signed the incident report as part of his official or supervisory duties. There is no evidence to establish that without Anderson's approval the incident report would not have been processed or that the plaintiff would not have been disciplined for the alleged

violation.  Accordingly, the plaintiff cannot establish that Anderson participated in any violation of his constitutional rights and therefore the undersigned recommends summary judgment should be granted in Anderson's favor.

    2.  <u>Magistrate William Hale</u>

The defendants' Motion for Summary Judgment asserts that Hale is entitled to immunity against the claims of the plaintiff because he acted as a member of a disciplinary committee in a prison system.  In his response, the plaintiff asserts that Hale is not entitled to immunity because the plaintiff's speech was clearly protected under the First Amendment.

This Court has previously granted Hale judicial immunity in his role as a magistrate for the West Virginia Division of Corrections.  In <u>Cook v. Rubenstein</u>, 3:07cv91 (N.D.W.V. March 12, 2009), Chief Judge John Preston Bailey affirmed the Report and Recommendation of Magistrate Judge James E. Seibert, which recommended that Hale be dismissed as a defendant in that case because he was immune from suit in his role as a magistrate.  Magistrate Judge Seibert found:

> In <u>Butz v. Economou</u>, 438 U.S. 478, 508 (197[)], the Supreme Court declared that '[a]lthough a qualified immunity from damages liability should be the general rules of executive officials charged with constitutional violations, our decisions recognize that there are some officials whose special functions require a full exemption from liability.[']  Applying the reasoning set forth in <u>Butz</u>, the Fourth Circuit has concluded that absolute immunity attaches to certain members of the executive branch when their role in administrative adjudicatory proceedings is functionally comparable to that of a judge.  <u>See</u> <u>Ward v. Johnson</u>, 690 F.2d 1098) (4th Cir. 1982).
>
> It is clear from reading the State of West Virginia Division of Corrections Policy Directive Number 325, that the role of a correctional magistrate is functionally comparable to that of a judge.  Accordingly, Magistrate Hale is entitled to absolute immunity and should be dismissed as a defendant.

<u>See</u> <u>Cook</u>, dckt. 73 at 14-15.  In support of this finding, Magistrate Judge Seibert noted that "[a] correctional magistrate is a Division off (sic) Corrections' employee who is employed independently

of the institutional chain of command to conduct inmate disciplinary hearings pursuant to division policy." *Id.* at n. 6.

Pursuant to this Court's decision in <u>Cook</u>, the undersigned recommends that Hale be granted immunity from suit.

## C.   <u>Merits of the Plaintiff's Claims</u>

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987).  Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, § 1983 provides a "broad remedy for violations of federally protected civil rights."  <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 685  (1978).  Generally speaking, to prevail upon a claim under § 1983, a plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

However, even if the plaintiff can establish the elements of a § 1983 claim, the defendants are nonetheless entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "When presented with a section 1983 claim to which qualified immunity has been asserted as a defense, a court must first determine whether the plaintiff has alleged the deprivation of a constitutional right."  <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 574 (4th Cir. 2001).  "Only if a constitutional claim has been alleged should we proceed to the determination of whether qualified immunity shields the defendant from liability."  *Id.* at 574.  The burdens of proof and persuasion fall on the defendant official claiming qualified immunity.  <u>Wilson</u>

v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).  Therefore, when ruling upon a qualified immunity issue, a court must consider the alleged facts "in the light most favorable to the party asserting the injury."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

       1.   Vague and Ambiguous Policy Directives

As noted in the undersigned's first R&R, due process "requires certain minimal standards of specificity in prison regulations."  See Meyers v. Alldredge, 492 F.2d 296, 310 (3d Cir. 1974).  Therefore, it is unconstitutional to subject an inmate to disciplinary action for a violation of a vague and ambiguous regulation.  See Arey v. Robinson, 819 F.Supp. 478, 490 (D.Md. 1992).  Nonetheless, given the "fundamental difference between normal society and prison society . . . it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulation, every conceivable form of misconduct which threatens prison security."  Meyers, *supra*.  Thus, a policy is not vague and ambiguous unless a prisoner of normal intelligence could not reasonably determine that his conduct would violate the particular regulation.  Arey at 491.

Here, there are two different policy directives at issue.  The first policy, PD 503(V)(B)(2)(b) states: "Inmate to inmate letters must only be written correspondence and not contain any items, money or other articles."  Because the plaintiff attempted to circumvent this restriction by receiving a photograph of another DOC inmate through a third party, the plaintiff was charged with, and received, disciplinary sanctions for violating PD 325.00-2.21, Misuse of Correspondence Regulations.  That policy states: "No inmate shall violate, or attempt to violate, any correspondence procedure of the institution/facility/center."  The plaintiff, however, contends that he did not violate, nor attempt to violate, PD 503.00.  The plaintiff asserts instead that, he knew he could not receive the photograph in a written correspondence from his girlfriend, so in a letter to her, he suggested that

she send the photograph to his father, so that he might send it to him.[7] Therefore, the plaintiff asserts that PD 325.00-2.21 is vague and ambiguous as applied to his circumstances.

As noted several times by the parties and the Court, neither PD 503.00 nor PD 325.00-2.21 is vague or ambiguous on its face. PD 503.00 clearly states that letters between inmates may not contain any item or article other than the written communication. A person of reasonable intelligence should know that this includes photographs. However, this regulation says nothing about attempting to receive photographs from third parties. Moreover, PD 325.00-2.21 clearly mandates that attempting to violate any correspondence procedure will result in disciplinary action. Thus, a person of reasonable intelligence should know that violating or attempting to violate a correspondence regulation could result in disciplinary proceedings. Although the plaintiff concedes that he attempted to circumvent the photograph restriction in PD 503.00, the plaintiff asserts that as he is permitted to receive photographs in non-inmate correspondence, and to retain such photographs in his personal property, he did not violate any correspondence regulations when he suggested Ms. Barker send him a picture through his father.

Although 325.00-2.21 is neither vague nor ambiguous on its face, the undersigned believes that the regulation is vague and ambiguous as applied in these circumstances. The plaintiff is correct. There was nothing in the letter he sent to Ms. Barker, other than the letter itself, nor did he

---

[7]From the original pleadings, the undersigned initially believed that the plaintiff had been punished for actually receiving the photograph of Ms. Barker through his father. However, at the motion hearing on October 27, 2009, it was revealed that no exchange ever took place. Instead, it appears that the plaintiff wrote a letter to Ms. Barker which stated: "do you have anymore pictures of you that I could peep at? Sure Dad would love to see em. Maybe he'll even be so kind to show me then." That letter was intercepted by prison mailroom staff. The letter never made it to Ms. Barker and no photograph was ever exchanged, either from direct inmate to inmate contact, or through a third party.

attempt to send anything other than the letter. Thus, he did not violate the policy on its face. Moreover, the Court fails to see how the plaintiff's suggestion to Ms. Barker was an attempt to violate the policy. The plaintiff did not attempt anything. He merely suggested it.

In addition, the plaintiff is not prohibited from retaining photographs in his personal property and the Court can find no regulation which prohibits an inmate from receiving photographs from a third party. The only regulation related to this issue, PD 503.00, pertains only to inmate to inmate letters. However, there was no inmate to inmate exchange of any kind in this instance. Thus, it does not appear that the plaintiff violated or attempted to violate any regulation in this case. To the contrary, it appears that the plaintiff was careful not to violate the regulations. Attempting to "beat the system" is simply not covered under this regulation and PD 325.00-2.21 does not address circumventing DOC policy. Thus, it is not clear that a person of reasonable intelligence would know that what the plaintiff did in this case was wrong. Accordingly, the regulations in question are vague and ambiguous as applied in these particular circumstances.

Nonetheless, because the plaintiff's claim is grounded in the due process clause,[8] even if the policy in question is vague and ambiguous as applied to the plaintiff, in order to succeed on this claim, the plaintiff must show that he suffered an atypical or significant hardship as a result of the disciplinary sanctions he received. In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court of the United States held that "in order to show the deprivation of a liberty protected by the Due Process Clause, an inmate must show that: (1) the conditions exceed the sentence imposed in such

---

[8]The Fourteenth Amendment of the United States Constitution prohibits a State from depriving a "person of life, liberty, or property, without due process of law." Those rights are limited, however, for persons convicted and confined in prison. <u>See</u> <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991) ("confinement to prison does not strip a prisoner of all liberty interests").

an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life." Taylor v. Rubenstein, 2009 WL 601971 (S.D.W.Va. March 5, 2009) (citing Sandin at 484).

In this case, the plaintiff received only 30-day loss of privileges, suspended. Such sanctions simply do not lead to atypical confinement. *Id.* at *4 (citing Gaston v. Taylor, 946 F.2d at 343) (a prisoner has no liberty interest in retaining privileges). In addition, there is no evidence that the fact the plaintiff was punished for this conduct would affect a later decision to grant parole. See Gaston v. Taylor, 946 F.2d at 344 (citing Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979)); see also Pinkney v. United States Dept. Of Justice, 1:07cv132 (N.D.W.Va. May 19, 2009) (prisoner has no liberty interest in outcome of UDC hearing because of the potential affect a guilty finding could have on future parole eligibility). Thus, even though the Court believes that the regulation in this case was vague and ambiguous as applied to the circumstances in this case, under Sandin, the plaintiff cannot succeed on his due process claim and the defendants are entitled to judgment as a matter of law on this issue.

2. First Amendment Right to Freedom of Speech

The lawful incarceration of an individual necessarily results in the limitation of many rights and privileges that the individual once enjoyed. A prisoner "retains those First Amendment rights not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Legitimate penological objectives include deterrence of crime, rehabilitation, and preservation of internal security. *Id.* at 822-23. For example, in Procunier v. Martinez, 416 U.S. 396 (1974), the Supreme Court held that censorship of prison mail is justified if (1) the challenged regulation or practice furthers an important or substantial

government interest unrelated to the suppression of expression; and (2) the challenged regulation or practice only restricts the First Amendment freedoms no more than necessary to protect the government interest involved. See Thornburgh v. Abbott, 490 U.S.401, 411-14 (1989)(limiting Martinez's strict scrutiny analysis to outgoing prison mail).[9]

Prison officials may not censor any correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Thornburgh, 490 U.S. at 423 (citing Martinez, 416 U.S. at 412). Censorship for the violation of prison disciplinary rules should be properly limited to communications that relate to more concrete violations such as "escape plans, plans for disruption of prison system or work routine, or plans for the importation for contraband." McNamara v. Moody, 606 F.2d 621, 624 (5th Cir.), cert. denied 447 U.S. 929 (1980).[10] Thus, prison officials may not punish a prisoner for written statements made to an outsider, even if the same statements would be grounds for disciplinary action if made verbally to a prison official. Id. (the prisoner wrote a letter to his girlfriend where he accused a prison guard of bestiality); See also Loggins v. Delo, 999 F.2d 364 (8th Cir.1993) (prison officials could not discipline inmate for writing a letter to his brother, which contained derogatory and insulting remarks about a prison official even though the inmate knew the letter might be read by prison officials); Brooks v. Andolina, 826 F.2d 1266, 1268 (3rd Cir.1987) (disciplining an inmate for his statements about a

---

[9]In Thornburgh, the Court held as follows: "We now hold that regulations affecting the sending of a 'publication' to a prisoner must be analyzed under the Turner reasonableness standard. Such regulations are 'valid if [they are] reasonably related to legitimate penological interests'.... Furthermore, we acknowledge today that the logic of our analyses in Martinez and Turner requires that Martinez be limited to regulations concerning outgoing correspondences."

[10]McNamara held that disciplinary action brought against an inmate violated his First Amendment rights because "coarse and offensive remarks are not inherently breaches of discipline and security, nor is there any showing that they will necessarily lead to the breaking down of security or discipline."

correctional officer in a letter to the NAACP violates the First Amendment; Osterback v. Ingram, 2000 WL 297840, *8 (N.D.Fla.2000)(denying qualified immunity because plaintiff's comments in his letter, while vulgar and offense, did not implicate legitimate security concerns);[11] Bressman v. Farrier, 825 F.Supp. 231, 234 (N.D.Iowa 1993)(the disciplining of an inmate for offensive comments made about prison staff in a letter to inmate's brother violated the First Amendment).[12]

On the other hand, prisoners have no First Amendment "right to address prison officials in a disrespectful or abusive manner, or to engage in other forms of protest which impose clear and present danger of disorder and violence." Scarpa v. Ponte, 638 F.Supp. 1019, 1028 (D.Mass.1986) (citing Savage v. Snow, 575 F.Supp. 828, 836 (S.D.N.Y.1983)); see also Goff v. Dailey, 991 F.2d 1437 (8th Cir.1993) (holding that an inmate was not deprived of his First Amendment rights when he was disciplined for making crude personal statements about a correctional officer in the presences of several other prisoners). Accordingly, disciplinary measures taken to preserve the prison's security interest will not offend the First Amendment if a prisoner, under the pretext of a legitimate personal correspondence, uses outgoing mail as a means to verbally abuse prison staff without incurring disciplinary consequences. Leonard v. Nix, 55 F.3d 370, 375-76 (8th Cir.1995). The Court reasoned that prisoners could be punished for derogatory comments clearly directed at and meant to be read by prison employees. Leonard, 55 F.3d at 371 (plaintiff's letter stated "They really

---

[11]Prisoner's letter dated May 28, 1996, contained the following: "[T]hat mailroom bitch has a hard-on for me ... Frieda, that's her name ... Frieda the Fascist ..."; "f --- ing Nazi ultraconservative bastards"; "everyone has to be something in life, even if it's an asshole. I think that's why they all wear brown, it camouflages the fact that most of them are just assholes in disguise." Osterback, 2000 WL 297840, * 4.

[12]Prisoner's letter to his brother stated the following: "[Y]eah, their (sic) real assholes, my counselor is a dick head, the officers working here are punks, the ladies in the mail room are bitches, now I hope they all read this letter and get their kicks off of it." Bressman, 825 F.Supp. at 232.

got pissed off for me calling him [the Warden] a n-----.  Ha. That's why I'm putting it in this letter so many times.");[13] see also Carroll v. Tucker, 17 Fed. Appx. 392 (7th Cir.2001)(plaintiff wrote the following "Since the nosy fags in the mail room are reading my mail . . . all I can say is to deal with a different company that these assholes can verify is legit! ... Since I got a ticket for stating in one of my letters Assistance Asshole N-----Warden Hinsley I though I would say it again.  One more time: Assistance Asshole N-----Warden Hinsley.  Now issue two more tickets you nosy assholes reading my mail.").  A prisoner, however, cannot be punished merely because he is aware that his mail may be read by prison officials. Bressman, 825 F.Supp. at 234.

Having considered the plaintiff's claims in the light most favorable to the plaintiff, and applying the reasoning of the Courts in the above cited cases, the undersigned finds that the plaintiff alleges a cognizable First Amendment claim.  Based upon the letters between the plaintiff and his incarcerated girlfriend, Terri Barker, in October of 2007, in which the plaintiff made "rude comments and accusations" about prison officials, defendants charged the plaintiff with violating Policy Directive 325.00 - 2.32, which provides as follows: "Insubordination/Insolence:  An inmate shall not be insubordinate or insolent to a staff person.  No inmate shall slander any person." Specifically, in his first letter, the plaintiff wrote to Ms. Barker:

> Its (sic) apparent by reading the write-up the woman at the post office is reading my mail from you, Dad and whoever.  I guess her personal life is such a failure, boring, including relationships that she has nothing better to do than to make someone else's life miserable.  People like that who hate themselves and their own circumstances in life.  Or perhaps she was abused as a child or more likely done wrong by men in her past so she has to take it out on us.  But no matter,

---

[13] The Plaintiff went on to write that "I want you to know that they are going to copy this letter also but I really don't give a f---. I stand beside the 1st Amendment. I can say anything I want about this motherf --- ing n---- and he can't do a f --- ing thing about it. Ha." Leonard, 55 F.3d at 375.

nothing she can do to me can make my life unhappy.[14]

In his second letter to Ms. Barker, the plaintiff wrote, "the hearing officer and the PO lady was in cahoots so I'm not surprised I was found guilty." (Dckt. 2). The plaintiff further stated: "Think she needs Prozac or some other such drug. Got to have mental problems without doubt. Perhaps she is a voyeur. I'll start addressing your letters, Hi Terry (plaintiffs' girlfriend) and Karen (defendant Steward)." *Id*. Due to the incident reports filed by the defendants because of these letters, the plaintiff was found guilty of both charges of insubordination. *Id*. As a result, the plaintiff received 30 days loss of all privileges on both counts to run consecutive, thus not permitting the plaintiff to have visits, make telephone calls, watch TV, listen to a radio, read books, purchase items from the store or have more than one hour of recreation a day. (Dckt. 48 at p. 5).

Although the plaintiff's comments could be construed as offensive, they do not implicate legitimate security concerns. Plaintiffs' comments do not concern or insinuate "escape plans, plans for disruption of prison system or work routine, or plans for the importation for contraband." There is no direct or indirect indication that the plaintiff was intending violence or a confrontation with respect to the prison officials he spoke about to his girlfriend. The defendants maintain that an inmate has no absolute right to engage in insubordinate speech and allowing inmates to direct abusive comments toward prison officials would undermine discipline in prisons. However, based upon the Court's review of the record, it is difficult to interpret the plaintiff's comments as ones that would be considered a threat to security. See McNamara, 606 F.2d at 621. Even though the letter was addressed to another inmate, the defendant's legitimate penological objective is lacking due to the trivial nature of the plaintiff's comments. Moreover, the recipient, although another DOC

---

[14]See Dckt. 2 at p. 7.

inmate, was incarcerated in another facility. Therefore, the plaintiff's statements were not likely to have the effect of undermining Ms. Steward's authority or discipline in the facility. Neither were those statements likely to be a threat to institutional security, as the inmates were incarcerated in different facilities.[15] While rehabilitation and security are certainly sufficient goals for the prison system, they cannot be achieved at the expense of an inmate's First Amendment rights. Moreover, the fact that the plaintiff may have known that Steward or another correctional officer would read his comments is insufficient to justify censorship of his letters. See Loggins v. Delo, 999 F.2d at 364 (inmate could not be disciplined for writing derogatory comments about prison officials in a letter to his brother); Brooks v. Andolina, 826 F.2d at 1268 (First Amendment violated where prisoner disciplined for statements made about a correction officer in a letter to the NAACP); McNamara v. Moody, 606 F.2d at 624 (disciplinary proceedings for coarse and offensive remarks in an outgoing letter violates First Amendment where there is no showing that the remarks lead to the break down of security and discipline); Bressman v. Farrier, 825 F.Supp. at 234 (disciplining a prisoner for offensive comments in a letter to his brother violates the First Amendment).

The defendants next argue that these comments were being made directly to Steward. However, reading the comments and placing them in context demands a contrary conclusion. The letters were not addressed to Ms. Steward. They were addressed to Ms. Barker. In them, the plaintiff was ranting to his girlfriend about the perceived injustice of the disciplinary proceedings

---

[15] In addition, the defendants' argument that the statements were a threat to security because they advised another inmate at another facility of the names of prison staff and mailroom procedures, borders on the absurd. As far as the Court knows, Ms. Steward's name and position are not confidential information and are attainable by any DOC inmate who has the means and ability to find out that information. Moreover, being an inmate at another facility, it is not only likely, but probable that Ms. Barker was already aware of the aforementioned mailroom procedures, and the plaintiff was not advising her of any new or secret information.

against him. He did not know if Ms. Steward would read these letters. There is a clear difference between directing the comments at Ms. Steward because he wanted her to read them and writing them to Ms. Barker with the knowledge that they might be read by prison staff. That being said, there is no question that, had these comments been made directly to Steward, either verbally or in writing, then disciplinary proceedings for such comments would not offend the First Amendment. See Leonard v. Nix, 55 F.3d at 375-76. Nonetheless, as previously noted, merely because the plaintiff knew Steward or any other correction official would read these letters, is not sufficient grounds to justify disciplinary action. See Bressman, 825 F.Supp. at 234. In fact, the facts of this case are that Ms. Steward did not read the letters. The letters were read by other mailroom staff and then given to Ms. Steward. The evidence is further clear that the plaintiff could not have known that Steward would read the letters. These facts are not in dispute. Accordingly, the plaintiff's First Amendment rights have been violated with regard to case number SMC-07-0413-H and case number SMC-07-0425-H.

Thus, the Court now turns to whether the plaintiff's right to make offensive, but non-threatening statements in written correspondence to another prisoner were clearly established prior to 2007. A clearly established law is one that has been authoritatively decided by Supreme Court of the United States, the appropriate Court of Appeals, or the highest court of the state in which the action arose. See Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999). In making this determination, the Court must examine whether it would be clear to a reasonable officer that the conduct in question was unlawful at the time the incident occurred. Saucier v. Katz, 533 U.S. at 195. This inquiry "is an objective one, dependent not on the subjective beliefs of the particular officer . . . but instead on what a hypothetical, reasonable officer would have thought in

the circumstances." <u>Wilson v. Kittoe</u>, 337 F.3d at 402. However, "the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established." <u>Amaechi v. West</u>, 237 F.3d 356, 362 (4ᵗʰ Cir. 2001). Rather, the phrase "clearly established" requires only that the unlawfulness of the officer's conduct be apparent "in light of pre-existing law," not that the exact question presented has previously been held unlawful. <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999). Thus, the lack of controlling authority on the exact question at issue does not guarantee a grant of qualified immunity. <u>Wilson v. Kittoe</u>, 337 F.3d at 403.

Here, it is undisputed that the law is clearly established that an inmate has the right to make offensive, but non-threatening statements in written correspondence to non-prisoners. What is not so clear is whether an inmate has the same right when the same statements are written to another inmate at another state penal institution. To the contrary, it is also clearly established that an inmate's First Amendment rights in this regard are limited to those "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. at 822; <u>see</u> <u>also</u> <u>Procunier v. Martinez</u>, *supra*; <u>Thornburgh v. Abbott</u>, 490 U.S. at 411-14 (1974). Legitimate penological objectives include deterrence of crime, rehabilitation, and preservation of internal security. <u>Pell</u> at 822-23. This case is different from most First Amendment cases in that the plaintiff was not making the offensive comments to a disinterested third party outside the prison walls. The plaintiff here made these statements to another DOC inmate. Therefore, a reasonable officer in the same situation may not have known that disciplining the plaintiff for his statements would be unlawful. In point of fact, although the Court does not believe that the plaintiff's comments were harmful or offensive enough to threaten prison security in light of the fact that the other DOC inmate in this case was not incarcerated at the same facility as the

plaintiff, the court is not charged with the responsibility of safety and security of prisons. Those decisions are best left to the discretion and expertise of prison officials and those officials are due some deference in their decision making. Thornburgh v. Abbot, 401 U.S. at 416. Thus, the Court finds that a reasonable officer in the same situation may have acted in the same manner as Ms. Steward believing that it was reasonable to enforce the policy as it was understood at the time.

Accordingly, because it is not clear from established case law that what the defendants did was unlawful, insofar as the application of established case law to the specific facts of this case, and because the Court finds that the specific facts of this case do not fall outside the purview of what a reasonable officer would have done in the same circumstances, the undersigned finds that a grant of qualified immunity is appropriate in this case.

## V.   Recommendation

For the reasons stated, the undersigned makes the following recommendations:

(1) The defendants' Motion to Dismiss (dckt. 130) be **DENIED**.

(2) The defendant's Motion for Summary Judgment (dckt. 81) be **GRANTED in part** and **DENIED in part.** The motion should be granted to the extent that it seeks judgment as a matter of law for defendants William Anderson and William Hale. The motion should also be granted to the extent that it seeks qualified immunity for the remaining defendants as to the plaintiff's claim that disciplinary actions SMC-07-0413-H and SMC-07-0425-H violated his First Amendment free speech rights. In all other respects, the motion should be denied.

(3) The defendant's Supplemental Motion for Summary Judgment (dckt. 120) be **GRANTED** and that the complaint be denied as to the plaintiff's claim that disciplinary action SMC-07-0389-H violates the due process clause because the regulation on which it

is based is vague and ambiguous.

(4) The plaintiff's Motion for Summary Judgment (Dckt. 122) be **DENIED**.

(5) The Court enter judgment in favor of the defendants and dismiss this case from the active docket of this court.

Within fourteen (14) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: February 14, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE